UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY RYTI, *et al.*,<br><br>            Plaintiffs,<br><br>    v.<br><br>STATE FARM GENERAL INSURANCE COMPANY,<br><br>            Defendant.<br>_____/ | No. C-12-1709 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE**<br><br>**(Docket Nos. 24, 38)** |

## I.     INTRODUCTION

Plaintiffs Nancy Ryti and Robert Korman filed this action for breach of contract and breach of the covenant of good faith and fair dealing against their insurer, Defendant State Farm General Insurance Company, on December 23, 2010, based on disputed payments for damage to their home incurred on January 4, 2008.  Defendant seeks summary judgment on the grounds that Plaintiffs' suit is barred by the contractual limitations period in Plaintiffs' insurance policy and that Defendant handled Plaintiffs' claim reasonably as a matter of law.  In addition, Defendant moves to strike Plaintiffs' sur-reply filed in opposition to Defendant's summary judgment motion.  For the reasons set forth below, Defendant's motion for summary judgment and motion to strike are **GRANTED**.

///
///
///
///
///

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. Procedural Background

Plaintiffs filed this case in San Francisco Superior Court on December 28, 2010. *See* Notice of Removal, Docket No. 1, Ex. 1. After Plaintiffs served Defendant, this case was removed from San Francisco Superior Court in April 2012 and reassigned from Judge Ware in September 2012. *See* Notice of Removal, Docket No. 1; Order Reassigning Case, Docket No. 21. Defendant moved for summary judgment on October 9, 2012 on the grounds that Plaintiffs did not file suit within the limitation period specified by their insurance policy, that their bad faith claim fails as a matter of law, and that their punitive damages claim fails as a matter of law. *See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), Docket No. 24. Plaintiffs have agreed to dismiss their punitive damages claim without prejudice, but dispute Defendant's timeliness and bad faith arguments. *See* Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n"), Docket No. 31, at 2 n.1.

Plaintiffs have not disputed any of the material facts or underlying documentation put forth by Defendant, and have in fact submitted largely overlapping exhibits. *See* Pl.'s Opp'n, Docket No. 31, at 3:9-15; Decl. of Kirby Daily in Support of Def.'s Mot. for Summ. J. ("Daily Decl."), Docket No. 25; Decl. of Robert Korman in Support of Opp'n to Mot. for Summ. J. ("Korman Decl."), Docket No. 32.

B. Relevant Facts

On January 4, 2008, the rear deck of Plaintiffs' home was destroyed during a windstorm. Korman Decl., Docket No. 32, Ex. 1 at 1-7. Following the January 4, 2008 accident, Plaintiffs submitted a claim with their insurer, State Farm, which provided Plaintiffs with an estimate and payment of $21,882.47 for the replacement cost. *See id.* at 5. By way of letter dated January 15, 2008, Defendant specifically notified Plaintiffs of language in their policy that any action against them "must be started within one year after the date of loss or damage" and that "[t]he one year period referred to begins to run as of the date of this letter." *Id.*

Following this letter, Plaintiffs waited nearly a year, until January 13, 2009, when they reopened their claim. *Id.* at 8. Thereafter, throughout 2009, the parties corresponded regarding Plaintiffs' reopened claim. *See id.* at 11-21; Daily Decl., Docket No. 32, Exs. 10-13. Defendant

notified Plaintiffs on August 14, 2009 that it had not received certain requested information, and would keep its file open for only one more month. Daily Decl., Docket No. 25, Ex. 12. On August 20, 2009, Plaintiffs' attorney, J. Michael Anthony, indicated that the engineer and architect were making revisions to their plans. *Id.*, Ex. 13. Nevertheless, Defendant notified Plaintiffs by letter dated September 10, 2009 that it was closing its file, and indicated to Plaintiffs to "[p]lease refer to our January 15, 2008, letter for the Suit Condition" as their "claim reopened on January 13, 2009, and is tolled to the date of this letter." Daily Decl., Docket No. 25, Ex. 14.

Following this letter, the parties continued to correspond regarding disputed costs in the plans for rebuilding Plaintiffs' deck. *See id.* at 24-26; Daily Decl., Docket No. 25, Exs. 15-25. For example, on October 2, 2009, Defendant sent Plaintiffs' counsel a letter with an attached check reimbursing Plaintiffs for tree removal and other expenses. *See* Daily Decl., Docket No. 25, Ex. 17. In this letter, the claim representative obliquely responds to a question from Plaintiffs regarding what would happen if repairs exceeded two years, but does not mention the claims limitation period:

> Mr. Korman had asked what would happen if repairs exceeded two years?
>
> Answer: I'm not sure if he was inquiring as to how we would issue payment and/or adjust additional claims. We would issue any additional monies owed for the replacement of the deck with like kind once we have received contractor's estimates to prove that additional monies are owed. If Mr. Korman was asking about the two years how it would relate to Building Ordinance and Law Coverage, he will need to verify before the two years what the city and county are enforcing for code work for the deck.

*Id.*

In December 2009, Defendant obtained a report from Philip Whitehead (the "Whitehead report"), which analyzed the parties' contentions regarding replacement of Plaintiffs' deck, concluding that Plaintiffs' plans "include[d] substantial upgrades not mandated by City Codes." Korman Decl., Docket No. 32, Ex. 2 at 4-8. On the basis of the Whitehead report, Defendant issued Plaintiff an additional check on December 21, 2009 covering only code-related work and necessary engineer and architect costs. *Id.* at 1-3.

Following this transaction, the parties continued to dispute Plaintiffs' claim through June 2010. *See id.* at 17-20; Daily Decl., Docket No. 25, Exs. 27, 30-37. Finally, on June 8, 2010,

3

Defendant reimbursed Plaintiffs for an additional permit, indicating that "[t]his is the last permit that we will pay for in regard to the deck. We pay your claim on December 21, 2009." Daily Decl., Docket No. 25, Ex 34.[1] In response to Plaintiffs' submission of additional documentation, on June 21, 2010 Defendant again notified them that it "ha[d] paid all that is owed under the policy," reminded Plaintiffs that an "action must be started within one year after the date of loss or damage," and notified Plaintiffs that "[t]he one year suit limitation period has run." Korman Decl., Docket No. 32, Ex. 4. Nevertheless, Plaintiff continued to submit additional invoices and Defendant continued to indicate that it had paid all that was owed under the policy. *See* Daily Decl., Docket No. 25, Exs. 40-51. Defendant repeatedly notified Plaintiff that the one year claim limitation had already run on August 5, 2010, August 25, 2010, September 23, 2010, October 20, 2010, November 29, 2010, and December 13, 2010. *Id.*, Exs. 41, 43, 45, 47, 49, 51. Yet, Plaintiff did not file suit until December 28, 2010. *See* Notice of Removal, Docket No. 1, Ex. 1.

Plaintiffs' insurance policy with State Farm specifically provides that "[n]o action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage." Daily Decl., Docket No. 25, Ex. 1, at RYTICP020. Plaintiffs do not contest the validity of this policy and, in fact, submitted other sections of the same policy as an attachment to their complaint, albeit omitting the section discussing the one-year contractual limitation period. *See* FAC, Docket No. 12-1, Ex. A.

### III. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine

---

[1] This letter indicates that the date of loss is January 4, 2010. *See* Daily Decl., Docket No. 25, Ex. 34. However, all subsequent correspondence from Defendant and Plaintiffs before the December 28, 2010 filing of Plaintiffs' complaint in this matter indicates January 4, 2008 as the date of loss, confirming the parties' understanding. *See id.* at Exs. 35, 37-51. The January 4, 2010 date of loss was an obvious error.

only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Federal Rule of Civil Procedure 56(b) authorizes a party to file a motion for summary judgment "at any time until 30 days after the close of all discovery." However, if the party opposing summary judgment shows by affidavit or declaration that it cannot present "facts essential to justify its opposition," a court may defer considering the motion, deny the motion, allow time to obtain affidavits or declarations or take discovery, or issue any other appropriate order. Fed. R. Civ. P. 56(d) (emphasis added).

B.  One Year Claim Limitation

1.  Statement of Law

Federal courts sitting in diversity apply state law in considering statutes of limitations. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980). Under California insurance law, contractual limitation periods shorter than the statute of limitations are enforceable if clearly stated in the policy and the period is not so short to be unreasonable, with a one-year contractual limitations period being considered reasonable. *See Fageol Truck & Coach Co. v. Pac. Indemnity Co.*, 18 Cal. 2d 748 (1941). With respect to property insurance, an insured's action for breach of contract and bad faith accrues when the insured discovers or should have discovered all facts essential to the cause of action. *See Abari v. State Farm Fire & Cas. Co.*, 205 Cal. App. 3d 530, 535 (1988).

However, the contractual limitation period is suspended from the time an insured files a claim until the insurer formally denies the claim. *See Prudential-LMI Com. Insurance v. Super. Ct.*, 51 Cal. 3d 674, 678 (1990). This equitable tolling ends upon the insurer's payment of a claim, even if the insurer does not send an unequivocal written statement informing the insured that the claim was closed. *Marselis v. Allstate Ins. Co.*, 121 Cal. App. 4th 122, 125-26 (2004). Once a claim has

5

been closed, reconsideration of the claim does not serve to reinstate tolling.  *See Singh v. Allstate Ins. Co.*, 63 Cal. App. 4th 135, 142 (1998).

On the other hand, if the insurer induces the insured to delay filing suit until after the contractual limitation period has passed, it may be estopped from invoking or held to have waived the contractual limitations period.  *See Elliano v. Assurance Co. of Am.*, 3 Cal. App. 3d 446, 454 (1970) (estoppel); *Stinson v. Home Ins. Co.*, 690 F. Supp. 882, 885 (N.D. Cal. 1988) (waiver).  Conduct after the limitations period has run, however, does not amount to waiver or estoppel.  *Prudential-LMI*, 51 Cal. 3d at 690 n.5.  Thus, for example, an insurer's investigating a claim after the contractual limitation period has passed does not constitute a waiver.  *See Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1163 (9th Cir. 1995).

C.     Plaintiffs' Contractual Limitation Period

Defendant closed Plaintiffs' claim when it issued a check and notified Plaintiffs on January 15, 2008 that their statute of limitations would begin running as of that date.  Korman Decl., Ex. 1, at 5.  Plaintiffs chose to wait two days shy of one year (*i.e.* January 13, 2009) before notifying Defendant that they wished to reopen their claim.  *Id.* at 8.  But as noted above, reconsideration does not reinstate tolling.  *See Singh*, 63 Cal. App. 4th at 142.  Thus, Plaintiffs' claim limitation period expired two days later on January 15, 2009.

Plaintiffs contend that (1) State Farm referred to January 4, 2010 as the date of loss in several letters to Plaintiffs (*see* Pl.'s Opp'n, Docket No. 31, at 3:9-15, 5:5-6); (2) State Farm revived Plaintiffs' claim (*see id.* at 5:3-4); and (3) depositions that have not yet taken place will shed light on the running of the statute of limitations (*see id.* at 2:23-26).[2]  These arguments are without merit.

First, the argument that Plaintiffs somehow relied on State Farm's indication that January 4, 2010 was the date of loss is baseless: *every* letter cited by Plaintiffs was filed *after* the complaint was filed in this matter.  *See* Daily Decl., Docket No. 25, Exs. 63 [June 20, 2011], 65 [July 5, 2011], 67 [July 22, 2011], 69 [August 26, 2011], 71 [September 7, 2011], 74 [October 20, 2011].  Hence,

---

[2]  Plaintiffs also refer to "State Farm's internally inconsistent representations to Plaintiffs," but do not identify any such internally inconsistent representations.  *See* Pl.'s Opp'n, Docket No. 31, at 5:3-4.

1 there was no reliance in delaying the filing of this suit. The one letter before Plaintiffs filed their
2 complaint in this matter indicating January 4, 2010 as the date of loss – which Plaintiffs do not cite –
3 was followed by numerous letters from both parties confirming January 4, 2008 as the date of loss.
4 *See id.* at Exs. 34-35, 37-51. This was an obvious inadvertent error. Plaintiffs could not reasonably
5 have relied on these representations to their detriment.[3]

6 Plaintiffs make no showing that State Farm somehow revived their claims. Although, the
7 letters submitted by Defendant indicate that it reconsidered Plaintiffs' claim based on Plaintiffs'
8 repeated inquiries, as noted above that reconsideration does not reinstate tolling. *See Singh v.*
9 *Allstate Ins. Co.*, 63 Cal. App. 4th 135, 142 (1998).

10 Even assuming that Plaintiffs' claim limitation period did not expire on January 15, 2009,
11 and that some tolling occurred, Defendant notified Plaintiffs that it would be closing their file again
12 and did so on September 10, 2009. Daily Decl., Docket No. 25, Exs. 13-14. At this point, Plaintiffs,
13 who had already obtained counsel, had two days to file suit (since nearly a year had run from the
14 initial close to Plaintiffs' request to reopen their claim), Yet, they neglected to do so. Thus, if
15 Plaintiffs' claim limitation period did not expire on January 15, 2009 it would have on September
16 12, 2009.

17 Instead, Plaintiffs waited nearly two additional weeks to send Defendant documentation it
18 had requested. *Id.*, Ex. 15. Defendant then made additional payments based on information
19 submitted by Plaintiffs, culminating in the December 21, 2009 payment based on the Whitehead
20 report. *Id.*, Ex. 25. This date presents yet another possible end to Plaintiffs' claim limitations
21 period, even though the letter does not include explicit language indicating that Plaintiffs' statute
22 would begin running. *See Marselis*, 121 Cal. App. 4th at 125-26 (payment of claim ends equitable
23 tolling even without unequivocal language closing claim).

24 Yet Plaintiffs again failed to file suit. Finally, Defendant resorted to sending repeated letters
25 notifying Plaintiffs that it had closed Plaintiffs' claim and their time period for filing suit had run,
26 beginning with its letter of June 21, 2010. *See* Daily Decl., Docket No. 25, Ex. 37. Thus, even if

---

28 [3] Indeed, Plaintiffs' own letters reference January 4, 2008 as the date of loss. *See, e.g.*, Daily Decl., Docket No. 25, Exs. 38, 40, 42, 44, 46, 48, 50, 52-54, 56-57, 60.

1  none of the other dates served as the end of Plaintiffs' claim limitation period, two days after this
2  date, June 23, 2010, would have been the last possible date upon which Plaintiffs could have filed
3  suit.  Again, Plaintiffs waited over six months from that date to file suit, finally doing so on
4  December 28, 2010.

5  Lastly, and stretching the bounds of reason as far in Plaintiffs' favor as possible, even if
6  Plaintiffs were to somehow argue that their claim was tolled from the date of loss on January 4, 2008
7  until Defendant paid Plaintiffs additional sums on the basis of the Whitehead Report on December
8  21, 2009, nearly two years later, their limitation period would have expired on December 21, 2010, a
9  week before Plaintiffs filed suit.  Thus, no matter how the Court attempts to slice and dice the record
10 in Plaintiffs' favor, there is simply no way for Plaintiffs to overcome Defendant's statute of
11 limitations defense.

12 As to their third argument, Plaintiffs have not identified any information they could obtain
13 through discovery that would save their case from this defense as would be required to find in their
14 favor on the basis of Rule 56(d), which requires "a nonmovant show[] by affidavit or declaration
15 that . . . it cannot present facts *essential* to justify its opposition . . . ." Fed. R. Civ. P. 56(d)
16 (emphasis added).  Plaintiffs identify various depositions they wish to take, but do not indicate how
17 any of these depositions could conceivably provide information which would save this suit from the
18 bar of the statute of limitations.

19 D.    Reasonableness of Claim Handling

20 Defendant argues that it handled Plaintiffs' claim reasonably as a matter of law. *See* Def.'s
21 Mot., Docket No. 24, at 17:16-21:23.  Plaintiffs have not substantively opposed this argument,
22 instead insisting that they need additional time to conduct discovery into the handling of their claim.
23 At this point in the litigation, prior to discovery, it is conceivable that Plaintiffs might be able to
24 mount an argument if permitted additional discovery.  However, this question is rendered moot
25 given the Court's finding as to Plaintiffs' failure to file suit within the relevant claim limitations
26 period.

27 E.    Motion to Strike

28 On November 8, 2012, Plaintiffs filed a sur-reply in opposition to Defendant's motion for

8

summary judgment in this matter. Pl.'s Sur-Reply, Docket No. 37. Defendant moves to strike this sur-reply due to Plaintiffs' failure to obtain either leave of court or Defendant's stipulation to permit filing. Mot. to Strike, Docket No. 38. In the alternative, Defendants seek the opportunity to respond to Plaintiffs' sur-reply. *Id.*

Civil Local Rule 7, which governs motion practice in this Court, provides that "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval . . . ." N.D. Cal. Civ. R. 7-3(d). This rule contains *only* two exceptions, those being for objections to new evidence submitted with a reply and for notice to the court of a relevant judicial opinion published after the opposition or reply was filed. *See id.*

Here, Plaintiffs have not obtained leave of court. Nor does their brief fall within either of the two exceptions to receiving leave of court, as it neither objects to new evidence raised in the reply nor cites any judicial opinion published after the preceding briefs. *See* Pl.'s Sur-Reply, Docket No. 37. Thus, the Court grants Defendant's motion to strike. Defendants' request to file a response to the sur-reply is therefore moot.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment and motion to strike are **GRANTED**.

This order disposes of Docket Nos. 24 and 38.

IT IS SO ORDERED.

Dated: November 21, 2012

_____
EDWARD M. CHEN
United States District Judge